IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 80298-4-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JOSE LUIS VAZQUEZ-SANTOS, | ) | |
| | ) | |
| Appellant. | ) | |

BOWMAN, J. — Jose Luis Vazquez-Santos appeals his jury convictions for one count of first degree and one count of second degree child molestation. He argues that the trial court erred in denying his motion for a new trial where his attorney interfered with his right to testify and that ineffective assistance of counsel and cumulative error prevented a fair trial. He also filed a statement of additional grounds asserting several claims of error. We affirm.

FACTS

The State charged Vazquez-Santos with one count of child molestation in the first degree and one count of child molestation in the second degree for repeatedly molesting his stepdaughter A.V. when she was between the age of 7 and 13 years old. A.V. did not report the abuse to the police until she was an

adult. A visit from Vazquez-Santos at her workplace after years of no contact with him triggered her report to law enforcement.

The case proceeded to jury trial in March 2019. Jury selection encompassed two days, during which Vazquez-Santos' attorney questioned 70 prospective jurors with him present. After jury selection, the State disclosed it would not offer at trial any of Vazquez-Santos' statements made to law enforcement at the time of his arrest. This included a statement by Vazquez-Santos about a consensual sexual relationship he claims he had with A.V. when she was 19 years old. The State also disclosed it would offer testimony about an uncharged sexual assault of A.V. as evidence of Vazquez-Santos' "lustful disposition" toward her. Defense counsel agreed that the evidence was admissible for that purpose.[1]

In its opening statement, the State described the uncharged sexual assault allegation as "touching turned to rape." In the defense opening statement, counsel clarified that Vazquez-Santos "is not charged with rape . . . . For whatever reason, the State has not charged that." During a recess, in response to counsel's remark, the prosecutor argued that the court should allow the State to call a filing deputy from the King County Prosecutor's Office to testify that the State could not have charged Vazquez-Santos with rape because the statute of limitations had expired. Defense counsel argued that no explanation

---

[1] "[E]vidence of collateral sexual misconduct may be admitted under ER 404(b) when it shows the defendant's lustful disposition directed toward the [victim]." State v. Ray, 116 Wn.2d 531, 547, 806 P.2d 1220 (1991). " 'Such evidence is admitted for the purpose of showing the lustful inclination of the defendant toward the [victim], which in turn makes it more probable that the defendant committed the offense charged.' " Ray, 116 Wn.2d at 547 (internal quotation marks omitted) (quoting State v. Ferguson, 100 Wn.2d 131, 134, 667 P.2d 68 (1983)).

was necessary but, after the trial court granted the State's request, agreed to a stipulated explanation instead of live testimony.

Before the State rested its case, defense counsel twice met with Vazquez-Santos about whether he should testify.[2] At the first meeting, defense counsel and another attorney conducted a mock direct-examination of Vazquez-Santos to explore the risks associated with his testimony. Both lawyers advised him against testifying. According to Vazquez-Santos, the attorney assisting defense counsel told him, "[Your attorney] will defend you, he will say everything for you." Vazquez-Santos did not make a final decision during the meeting about whether he would testify.

A few days later, defense counsel again consulted Vazquez-Santos about whether he should testify. Counsel repeated his opinion that Vazquez-Santos should not testify. Counsel later explained that a significant factor for his advice was concern that Vazquez-Santos' testimony could "open the door" to prejudicial statements he had made to law enforcement not offered in the State's case in chief. After the meeting, counsel believed that Vazquez-Santos planned to follow his advice not to testify.

On the morning of the final day of trial, the court asked defense counsel whether Vazquez-Santos would be testifying. Counsel told the court, "I do not anticipate my client testifying. I mean, I have, you know, obviously, something could change with this witness, but . . . I'm 99.9 percent confident and I shared

_____

[2] Vazquez-Santos told his lawyer he wanted to testify to explain to the jury his suspicions that A.V. fabricated molestation allegations because she was jealous about his new marriage and family. Vazquez-Santos claimed that he broke off a consensual sexual relationship with A.V. to pursue a relationship with his new wife.

that with [the prosecutor] that I do not anticipate my client testifying or the defense putting on a case." Vazquez-Santos did not dispute his attorney's representations. After the State rested its case, the court looked to defense counsel for a final determination about whether the defense would present a case. Counsel told Vazquez-Santos, " 'I'm not going to have you testify' " and advised the court, "[T]he defense rests." Vazquez-Santos again said nothing.

The jury convicted Vazquez-Santos of both charges. Postconviction, Vazquez-Santos obtained new counsel and filed a motion for new trial. He alleged that his lawyer prevented him from testifying because counsel did not affirmatively advise him he could testify even if his lawyer advised against it[3] and that he was misled into believing the jury would hear the substance of his testimony even if he did not testify. He also argued that he lacked sufficient time at trial to tell the court that he wanted to testify.

Vazquez-Santos moved the court for an evidentiary hearing to determine whether defense counsel violated his right to testify. Instead, the court ordered that defense counsel and the attorney who assisted with Vazquez-Santos' mock examination submit to interviews with the State. At a subsequent hearing, the court reviewed declarations from Vazquez-Santos, trial counsel, and new defense counsel along with a transcript of trial counsel's interview by the State. After oral argument, the court declined to order an evidentiary hearing and

---

[3] Vazquez-Santos also claimed in his declaration that he did not recall his lawyer telling him at all that he had the right to testify. But he did not raise that allegation in his motion for new trial.

denied Vazquez-Santos' motion for a new trial.[4]  The judge sentenced Vazquez-Santos to a standard-range indeterminate sentence.

ANALYSIS

Vazquez-Santos argues the trial court erred in denying his motion for new trial because his lawyer violated his right to testify.  He also contends his attorney performed deficiently by "opening the door" to prejudicial information.  Finally, Vazquez-Santos contends cumulative error denied him a fair trial.  We address each contention in turn.

Motion for New Trial

Vazquez-Santos argues that the trial court should have granted his motion for a new trial because his attorney violated his right to testify.  A trial court may grant a motion for a new trial when "substantial justice has not been done" and "it affirmatively appears that a substantial right of the defendant was materially affected."  CrR 7.5(a)(8).  The denial of a new trial is a matter mainly within the discretion of the trial court.  State v. McKenzie, 157 Wn.2d 44, 51, 134 P.3d 221, 225 (2006).  We review denial of a new trial for abuse of discretion.  McKenzie, 157 Wn.2d at 51.  An abuse of discretion occurs only when no reasonable judge would have reached the same conclusion.  McKenzie, 157 Wn.2d at 52.

Both federal and state law guarantee the right of criminal defendants to testify.  Rock v. Arkansas, 483 U.S. 44, 51, 107 S. Ct. 2704, 97 L. Ed. 2d 37 (1987); State v. Lee, 12 Wn. App. 2d 378, 387, 460 P.3d 701, review denied, ___

---

[4] It does not appear that either the State or Vazquez-Santos interviewed the attorney who assisted in Vazquez-Santos' mock examination.  In any event, neither party provided a transcript of an interview.

Wn.2d ___, 468 P.3d 622 (2020). Federally, the defendant's right to testify is implicitly grounded in the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. Rock, 483 U.S. at 51-52. Article I, section 22 of the Washington Constitution also protects a criminal defendant's right to testify. Only the defendant has the authority to decide whether to testify and any waiver of the right must be a voluntary decision made by the defendant. State v. Thomas, 128 Wn.2d 553, 558, 910 P.2d 475 (1996). "The conduct of not taking the stand may be interpreted as a valid waiver of the right to testify." Thomas, 128 Wn.2d at 559.

Violations of the right to testify can include an actual refusal by counsel to allow a defendant to testify in the face of an unequivocal demand, coercive acts by counsel compelling a defendant to waive the right to testify, or misrepresentations about the consequences of testifying to induce silence. State v. Robinson, 138 Wn.2d 753, 762, 982 P.2d 590 (1999). But counsel does not prevent a defendant from testifying by "merely advis[ing] [him] against testifying as a matter of trial tactics." State v. King, 24 Wn. App. 495, 499, 601 P.2d 982 (1979).

Allegations that defense counsel violated a defendant's right to testify are treated as claims of ineffective assistance of counsel, subject to the two-prong test of Strickland v. Washington, 467 U.S. 1267, 104 S. Ct. 2052, 80 L. Ed. 674 (1984). Robinson, 138 Wn.2d at 766. Under Strickland, the defendant must show both (1) deficient performance and (2) resulting prejudice to prevail on an ineffective assistance claim. Strickland, 466 U.S. at 687; State v. Jones, 183

6

Wn.2d 327, 339, 352 P.3d 776 (2015). Performance is deficient if it falls "below an objective standard of reasonableness based on consideration of all the circumstances." State v. McFarland, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). Prejudice exists if there is a reasonable probability that "but for counsel's deficient performance, the outcome of the proceedings would have been different." State v. Kyllo, 166 Wn.2d 856, 862, 215 P.3d 177 (2009); Strickland, 466 U.S. at 694; State v. Estes, 188 Wn.2d 450, 458, 395 P.3d 1045 (2017).

"[T]he defendant must present substantial, factual evidence" that his right to testify was violated "in order to merit an evidentiary hearing or other action." Thomas, 128 Wn.2d at 561. "Mere allegations" that a defendant's right to testify has been violated are insufficient to warrant a hearing. Robinson, 138 Wn.2d at 760. Instead, criminal defendants must set forth "specific facts" supporting their claims that are verifiable in the record. Robinson, 138 Wn.2d at 760.

Vazquez-Santos argues the trial court should have held an evidentiary hearing to determine if his attorney violated his right to testify. He contends he "offered more than bare assertions that counsel's actions undermined his right to testify under Robinson." We disagree. In Robinson, the defendant claimed his lawyer refused his demand to testify because the lawyer was personally frustrated by trial court rulings and did not want to participate further in the case. Robinson, 138 Wn.2d at 757. In support of his claim, Robinson produced affidavits from a jail transportation officer and another attorney who witnessed the confrontation between him and counsel. Robinson, 138 Wn.2d at 760. Robinson's lawyer also acknowledged Robinson " 'pleaded with' " him to testify,

yet he refused to call Robinson as a witness because he " 'only wanted to get this case done with.' " Robinson, 138 Wn.2d at 757. Our Supreme Court found this to be sufficient corroboration entitling Robinson to an evidentiary hearing. Robinson, 138 Wn.2d at 760-61.

Here, Vazquez-Santos alleges his attorney violated his right to counsel because he misrepresented his right to testify by omission. That is, he did not specifically advise Vazquez-Santos he "had the absolute right to testify even if counsel warned against it." Vazquez-Santos cites no authority requiring such a specific advisement.[5] Defense counsel was " 'confident' " he told Vazquez-Santos it was his choice whether to testify. " 'Unaccompanied by coercion, legal advice concerning [the] exercise of the right to testify infringes no right, but simply discharges defense counsel's ethical responsibility to the accused.' " Robinson, 138 Wn.2d at 763-64[6] (quoting Lema v. United States, 987 F.2d 48, 52 (1st Cir. 1993)).

Vazquez-Santos also argues that the attorney who assisted defense counsel during the mock direct-examination misled him into believing his attorney would tell the jury the substance of his testimony as an alternative to testifying. He claims the attorney told him, "[D]on't worry, [your attorney] will defend you, he will say everything for you." Vazquez-Santos' allegation is uncorroborated by the record. Additionally, the statement at issue is vague and does not support

---

[5] When a party fails to cite to relevant authority, we generally presume that the party found none. Edmonds Shopping Ctr. Assocs. v. City of Edmonds, 117 Wn. App. 344, 353, 71 P.3d 233 (2003).

[6] Alteration in original.

8

Vazquez-Santos' contention that the attorney promised that "the jury would hear his theory of the case even if he did not testify."

Finally, Vazquez-Santos provides no evidence that he made an unequivocal demand to his attorney or the court that he wanted to testify. Vazquez-Santos contends he had no chance to tell the court he wanted to testify because when it was time to make a decision, his lawyer told him, " 'I'm not going to have you testify[,]' and then announced that the defense rested." Vazquez-Santos' claim is not supported by the record. Before testimony on the final day of trial, Vazquez-Santos' attorney told the court he was "99.9 percent confident" no testimony from the defense would be forthcoming. Vazquez-Santos had ample time then to raise any disagreement he may have had about his lawyer's representation. He also had a chance to demand to testify at the close of the State's case. Without an "unequivocal demand[ ]" by a defendant that he be allowed to testify, "we will presume that the defendant elected not to take the stand upon the advice of counsel." Robinson, 138 Wn.2d at 765. Vazquez-Santos' allegations that his lawyer prevented him from testifying did not merit an evidentiary hearing and the trial court did not abuse its discretion in denying his motion for a new trial.[7]

---

[7] Vazquez-Santos also argues that "[e]ven without an evidentiary hearing, the declaration and interview establish" his claim. "If a defendant is able to prove by a preponderance of the evidence that his attorney actually prevented him from testifying, he will have established that the waiver of his constitutional right to testify was not knowing and voluntary." Robinson, 138 Wn.2d at 764-65. For the reasons discussed above, Vazquez-Santos fails to meet his burden.

Ineffective Assistance of Counsel

Vazquez-Santos argues his attorney was ineffective at trial because he "opened the door to information that . . . highlighted prejudicial uncharged conduct" in his opening statement.

A successful ineffective assistance of counsel claim requires both deficient performance and a showing of prejudice. Strickland, 466 U.S. at 687. We need not "address both components of the inquiry if the defendant makes an insufficient showing on one." Strickland, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697. As discussed, to establish prejudice, a defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In making this determination, we must consider the totality of the evidence before the jury. Strickland, 466 U.S. at 695.

Vazquez-Santos points to defense counsel's statement during opening remarks that "[f]or whatever reason," the State did not charge Vazquez-Santos with rape, which led to an instruction from the court that the statute of limitations legally prevented the State from charging him. The court told the jury that "this is an agreed statement of the parties":

> Defense counsel mentioned in opening statement that the State did not charge the defendant with rape for whatever reason. The parties now stipulate and agree that the State was legally prevented by the statute of limitations from charging the defendant with any crimes of a sexual nature alleged to have occurred after [A.V.] turned 15 years old.

10

Vazquez-Santos argues that the stipulation prejudice him because it "highlighted prejudicial uncharged conduct and bolstered the complainant's credibility." But the parties agreed that the rape allegation was admissible to show Vazquez-Santos' "lustful disposition" toward A.V. no matter if the State was legally able to charge him for the crime. Also, the jury knew that A.V. delayed reporting the rape for many years. Any prejudice from learning that the crime's statute of limitations had expired was low.

Nor did the instruction bolster A.V.'s credibility. The State offered the allegation of rape as evidence of Vazquez-Santos' "lustful disposition" toward A.V. That the State found the allegation to be credible was readily apparent to the jury. Vazquez-Santos does not establish that there is a reasonable probability that, but for counsel's error, the result of the trial would have been different. His attorney was not ineffective.

Cumulative Error

Vazquez-Santos asserts that cumulative error entitles him to a new trial. Cumulative error "is limited to instances when there have been several trial errors that standing alone may not be sufficient to justify reversal but when combined may deny a defendant a fair trial." State v. Greiff, 141 Wn.2d 910, 929, 10 P.3d 390 (2000); State v. Hodges, 118 Wn. App. 668, 673-74, 77 P.3d 375 (2003). As discussed above, Vazquez-Santos establishes no error.

Statement of Additional Grounds

Vazquez-Santos filed a statement of additional grounds raising several claims of error. First, he argues that the court should have appointed an

interpreter to assist him during the trial. But Vazquez-Santos did not request an interpreter and it is not apparent from the record that an interpreter was necessary. The record includes trial transcripts as well as the case scheduling order and a time-for-trial waiver written in English and signed by Vazquez-Santos. A trial court does not have an affirmative obligation to appoint an interpreter for a defendant where that defendant's lack of fluency or facility in the language is not apparent. State v. Mendez, 56 Wn. App. 458, 462-63, 784 P.2d 168 (1989).

Vazquez-Santos also complains that jury selection was rushed and that "[w]hen the jury was chosen, it was the lawyer . . . who picked them. He never took my opinion into account." Although the Rules of Appellate Procedure do not require a criminal defendant to include citation to the record or legal authority in a statement of additional grounds, under RAP 10.10(c), "the appellate court will not consider [the argument] if it does not inform the court of the nature and occurrence of [the] alleged errors." Vazquez-Santos does not sufficiently explain his claim so we do not consider it.

Vazquez-Santos next contends the trial court refused to accept or consider multiple letters of support from his friends and family. Again, the record does not support his claim. To the contrary, defense counsel filed the letters of support with the court as attachments to the presentence memorandum and the judge acknowledged the letters at sentencing.

Finally, Vazquez-Santos claims that the lifetime no-contact order issued by the trial court at sentencing was too broad because it does not "let me see my

children." But the judgment and sentence provides only that Vazquez-Santos is permanently restricted from contact with minors "without supervision of a responsible adult who has knowledge of this conviction." And the trial court noted that Vazquez-Santos' current wife is a responsible adult who "has knowledge of this conviction" and can supervise visits with his children.

We review the imposition of crime-related prohibitions for an abuse of discretion. In re Pers. Restraint Petition of Rainey, 168 Wn.2d 367, 374-75, 229 P.3d 686 (2010). Trial courts may impose "crime-related prohibitions" while a defendant is in community custody. RCW 9.94A.505(9), .703(3)(f). A "crime-related prohibition" prohibits "conduct that directly relates to the circumstances of the crime for which the offender has been convicted." RCW 9.94A.030(10). "Directly related" includes conditions that are "reasonably related" to the crime. State v. Irwin, 191 Wn. App. 644, 656, 364 P.3d 830 (2015); see also State v. Kinzle, 181 Wn. App. 774, 785, 326 P.3d 870 (2014). The jury convicted Vazquez-Santos of molesting his stepdaughter from the age of 7 through 13 years old. The prohibition restricting him from unsupervised contact with minors reasonably relates to the crime.[8]

We conclude the trial court did not abuse its discretion in denying Vazquez-Santos' motion for a new trial, his lawyer was not ineffective, there is no cumulative error, and he does not establish error in his statement of additional grounds. We affirm his conviction and sentence for one count of child

---

[8] Vazquez-Santos also raises in his statement of additional grounds the claim that his attorney did not "allow" him to testify. As already discussed, sufficient evidence does not support his claim.

molestation in the first degree and one count of child molestation in the second degree.

Brennan, J

WE CONCUR:

Mann, C.J.